UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DARELL DEON CHANCELLOR,

        Petitioner,

                                    CASE NO. 15-13284

v.                                      HONORABLE SEAN F. COX

JEFFREY WOODS,

        Respondent.

_____/

**OPINION AND ORDER
DENYING THE PETITION FOR WRIT OF HABEAS CORPUS,
GRANTING IN PART A CERTIFICATE OF APPEALABILITY,
AND GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

This matter has come before the Court on petitioner Darell Deon Chancellor's *pro se* habeas corpus petition under 28 U.S.C. § 2254. The habeas petition challenges Petitioner's conviction for possession of 450 to 999 grams of cocaine. *See* Mich. Comp. Laws § 333.7403(2)(a)(ii). Petitioner alleges that the prosecutor presented insufficient evidence to sustain his conviction and that his trial attorney's ineffectiveness deprived him of a fair trial. Respondent Jeffrey Woods urges the Court to deny the petition on the basis that the state court's adjudication of Petitioner's claims was not contrary to, or an unreasonable application of, Supreme Court precedent. The Court agrees. Accordingly, the habeas petition will be denied. Nevertheless, because reasonable jurists could disagree with the Court's assessment of Petitioner's challenge to the sufficiency of the evidence at trial, the Court will grant a certificate of appealability on that issue.

**BACKGROUND**

Petitioner was charged with four crimes: (1) possession with intent to deliver 450

to 999 grams of cocaine, Mich. Comp. Laws § 333.7401(2)(a)(ii); (2) possession of 450

to 999 grams of cocaine, Mich. Comp. Laws § 333.7403(2)(a)(ii); (3) felon in possession

of a firearm, Mich. Comp. Laws § 750.224f; and (4) possession of a firearm during the

commission of a felony (felony-firearm), Mich. Comp. Laws § 750.227b.  The charges

arose from the

> search of a house and seizure of 516.65 grams of cocaine.  On November
> 1, 2011, Detroit police surveilled a house at 5023 32nd Street during
> which Officer Steven Geelhood observed a black male engage in three
> independent hand-to-hand transactions of suspected drugs at the front
> door of the house.  The next day, police executed a search warrant.  Upon
> searching a second-floor kitchen area, police found a bag containing four
> smaller bags of cocaine and two loaded handguns.  The items were inside
> a clothes hamper that was tucked under a kitchen table. On top of the
> kitchen table, police found an open letter sent from the Michigan
> Department of Treasury and addressed to defendant at 5023 32nd Street.
> Police detained defendant's mother and a man during the search.
> Defendant was not then present at the house, but was later arrested.

*People v. Chancellor*, No. 314437, 2014 WL 6865488, at *1 (Mich. Ct. App. Dec. 4,

2014) (majority opinion on reconsideration).  Petitioner waived his right to a jury and

was tried before a judge in Wayne County Circuit Court where

> [t]hree police officers and defendant's parole officer testified in the
> prosecution's case-in-chief.  Defendant testified on his own behalf.
>
> Officer Geelhood testified that on October 31, 2011, he received
> information that heroin was being sold from the 32nd Street house.  The
> following evening, he watched the house and within 30 minutes saw three
> people independently go to the front door, have a conversation with a
> black man (who he later identified as the "seller" in his search warrant
> affidavit), and make purchases of what he believed to be heroin.  He
> testified that he observed these activities from about 400 feet away, using
> binoculars, and although it was dark, there was a light on at the front of
> the house.  Geelhood testified, consistent with the description he set forth

2

in the search warrant affidavit, that the seller he saw during this period of observation was a black male, 5'7" to 5'8" tall, 170–180 pounds, and of slim build. He also testified that the man was not wearing glasses.

Geelhood testified that he was "absolutely certain" that the man he observed was defendant. However, he conceded that defendant was 5'11" tall and of "heavy build," weighing, in his estimation, between 210 and 220 pounds. Given the clear divergence between his description of the seller and defendant's actual appearance, Geelhood was asked if his description of the seller in the affidavit could have been mistaken. He denied any error and reaffirmed his description of the seller as a man as much as 4 inches shorter and up to 50 pounds lighter than defendant appeared to him at trial.

All three officers testified that defendant was not present at the 32nd Street house when the warrant was executed. Present at the home were defendant's mother and a black male in his 50s, about 5'9" tall and of slim build, weighing approximately 170 pounds. This individual told the officers that he was working on the house, but that he did not live there. He was apparently not pursued as a suspect.

The officers testified that the 32nd Street house had at least four bedrooms—two on the first floor and two on the second. There were kitchens on both the first and second floors, though the second floor could only be accessed by stairs from the first floor, i.e., there was no separate entrance or private stairs to the second floor. There was a table in the upstairs kitchen. Beneath the table was a clothes hamper in which the officers found men's clothing, the large quantity of cocaine at issue, and two guns. None of the clothes were offered as evidence and the officers did not further describe the type or size of the clothing.

One of the officers testified that he found an envelope on the table in the upstairs kitchen that had been opened and contained a letter from the State of Michigan addressed to defendant at the 32nd Street address. The officer testified that prior to the discovery of this letter they did not have a name associated with the suspected seller. An officer asked defendant's mother where they could find defendant and she provided the officers with a different address. An officer testified that he went to that address and observed a car in the driveway that had been seen at the 32nd Street house the night before during surveillance. He ran the license plate and learned that the vehicle belonged to defendant. When defendant was later arrested, he was not in possession of any drugs.

Defendant's parole officer also testified. She stated that she had met with defendant on two occasions at the 32nd Street address and that he told

her that he lived there.

Defendant testified on his own behalf and stated that neither the cocaine nor the guns found at the 32nd Street house belonged to him. He testified that at the time of trial he was 30 years old, 5'11" tall, and weighed 250 pounds. He testified that on the date of the search, he weighed 245 pounds. He testified that he always wore the glasses he was wearing in the courtroom and could not function without them. He testified that he wore size 44 waist pants and it was shown that the shirt he was wearing was 5XL, though he conceded that the clothes were baggy.

The prosecution speculated in argument that defendant probably gained weight (apparently 40–60 lbs) due to eating jail food while awaiting trial.[1] In addition, the prosecution introduced a Secretary of State photo of defendant's head and shoulders taken in January 2011 in which he was not wearing glasses. Geelhood testified that, in his opinion, defendant appeared thinner in the photo than he did at trial.

Defendant testified that he lived on Robson Street with his wife and son at the time of the search and kept all of his clothes there. He testified that he had lived at his mother's home on 32nd Street when he was initially released from prison in November 2010, i.e., when he gave that address to the parole officer. He stated that after moving to the Robson address, he continued to represent to his parole officer that he lived at the 32nd Street house. He testified that he misrepresented his address to the parole officer because his workplace was near his mother's home and if he reported the change in address, he would have been reassigned to a parole office located a greater distance away. He testified that on the date of the search, the persons living at the 32nd Street house were his mother, his brother, his sister, and a male cousin. He described his brother as 37 years old, 5'9" tall, and weighing approximately 165–170 pounds. He described his cousin as 34 years old. He stated that another person, the man present at the house at the time of the search, was his mother's boyfriend, who lived in the house.

*Id.* at *3 - *5 (Shapiro, J., dissenting) (footnote in original). This summary of the facts,

as well as the majority's summary of the facts, are supported by the record before the

Court.

---

[1] Contrary to this argument, when defendant was admitted to the jail, a "detainee input sheet" was prepared that listed defendant's weight at 240 lbs. Admittedly, this document, while in the lower court record, was not admitted into evidence.

On November 12, 2012, the trial court found Petitioner guilty of possession of 450 to 999 grams of cocaine, Mich. Comp. Laws § 333.7403(2)(a)(ii).  The trial court acquitted Petitioner of the remaining charges, and on December 12, 2012, the trial court sentenced Petitioner as a fourth habitual offender to a term of 171 months (fourteen years, three months) to thirty years in prison.

Petitioner appealed his conviction through counsel, arguing that there was insufficient evidence at trial to support his conviction.  Petitioner argued in a *pro se* supplemental brief that his trial attorney was ineffective for failing to: (1) call two witnesses; (2) present exculpatory documents; and (3) object to the form of the cocaine in evidence.  A panel of the Michigan Court of Appeals affirmed Petitioner's conviction in an unpublished, *per curiam* decision.  *See People v. Chancellor*, No. 314437 (Mich. Ct. App. Sept. 30, 2014).[2]

Petitioner moved for reconsideration because the Court of Appeals did not address the issue he raised in his *pro se* supplemental brief.  On December 4, 2014, the Court of Appeals granted Petitioner's motion for reconsideration and vacated the order it issued on September 30, 2014.  *See People v. Chancellor*, No. 314437 (Mich. Ct. App. Dec. 4, 2014).  The Court of Appeals then issued another unpublished, *per curiam*

---

[2]  State appellate judge Douglas B. Shapiro filed a dissenting opinion in which he stated that he would reverse Petitioner's conviction and remand the case for a new trial because the trial court did not render sufficient factual findings for a reviewing court to determine whether the trial court properly applied the law.

decision in which the majority again affirmed Petitioner's conviction and Judge Shapiro dissented. *See Chancellor*, 2014 WL 6865488.[3]

Petitioner raised the same two issues in an application for leave to appeal in the Michigan Supreme Court. On May 28, 2015, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. *See People v. Chancellor*, 497 Mich. 1030; 864 N.W.2d 334 (2015). On September 11, 2015, Petitioner filed his habeas corpus petition in which he raises the issues that he submitted to the state courts on direct appeal.

## STANDARD

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, 562 U.S. 86, 97 (2011). Pursuant to § 2254, the Court may not grant a state prisoner's application for the writ of habeas corpus unless the state court's adjudication of the prisoner's claims on the merits:

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

_____

[3] The only difference in the initial opinion and the opinion on reconsideration is a brief footnote addressing Petitioner's claim about trial counsel.

> Under the "contrary to" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J., opinion of the Court for Part II).  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Id.* at 411.

"AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and 'demands that state-court decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)."  *Renico v. Lett*, 559 U.S. 766, 773 (2010).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id.*, at 103.

**ANALYSIS**

## A.  Sufficiency of the Evidence

Petitioner alleges that there was insufficient evidence at trial to support his conviction for possession of cocaine.  He contends that he was not in possession of, or near, any drugs when he was arrested, that the cocaine in evidence was found in his mother's home, and that the presence of multiple occupants of the residence mitigates against a finding of constructive possession.

The prosecutor's theory that Petitioner possessed the cocaine was based in part on Officer Geelhood's identification of Petitioner as the man he saw engaging in suspected drug deals the day before the search of the house on 32nd Street. Petitioner, however, contends that Officer Geelhood's description of that person did not match him.

Two of the three appellate judges on the panel that decided Petitioner's case concluded that the evidence was sufficient to sustain Petitioner's convictions.  The dissenting judge voted to reverse Petitioner's conviction because, in his opinion, the trial court did not render sufficient factual findings for a reviewing court to determine whether the trial court properly applied the law.

### 1.  Clearly Established Federal Law

The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is:

> whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.  But this inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt."  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  This familiar standard gives full play to

8

the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. 307, 318 -19 (1979) (internal citations and footnote omitted) (emphases in original).

*Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.S. 1, ——, 132 S.Ct. 2, 4, 181 L.Ed.2d 311 (2011) (*per curiam*). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.' " *Ibid.* (quoting *Renico v. Lett*, 559 U.S. 766, – ——, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010)).

*Coleman v. Johnson*, 132 S. Ct. 2060, 2062 (2012) (*per curiam*); *see also Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (stating that, because both *Jackson* and AEDPA applied to the petitioner's claim, the law commanded deference at two levels: deference to the trier-of-fact's verdict and deference to the state court's consideration of the trier-of-fact's verdict).

## 2. Application

The *Jackson* standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n.16. Petitioner was convicted of possessing between 450 to 999 grams of cocaine. To prove this crime, the prosecution was required to prove (1) that the substance in question was cocaine, (2) that the amount possessed was 450 to 999 grams, (3) that Petitioner was not authorized to possess the cocaine, and (4) that Petitioner knowingly

9

possessed the cocaine.  *See People v. Hartuniewicz*, 294 Mich. App. 237, 248; 816

N.W.2d 442, 448 (2011) (describing the elements of possession of Ketamine, a

schedule 3 controlled substance).

      The only issue in dispute here is whether Petitioner possessed the cocaine

seized by a police officer at 5023 32nd Street.  In Michigan,

> [a] person need not have physical possession of a controlled substance to
> be found guilty of possessing it.  Possession may be either actual or
> constructive, and may be joint as well as exclusive.  The essential
> question is whether the defendant had dominion or control over the
> controlled substance.

*People v. Fetterley*, 229 Mich. App. 511, 515; 583 N.W.2d 199, 202 (1998) (internal and

end citations omitted).  "[C]onstructive possession exists when the totality of the

circumstances indicates a sufficient nexus between the defendant and the contraband."

*People v. Wolfe*, 440 Mich. 508, 521; 489 N.W.2d 748, 754 (1992), *amended* Oct. 9,

1992.  "[C]ircumstantial evidence and reasonable inferences arising from the evidence

are sufficient to establish possession."  *Fetterley*, 229 Mich. App. at 515; 583 N.W.2d at

202 (citing *People v. Sammons*, 191 Mich. App. 351, 371; 478 N.W.2d 901 (1991)).

### a.  The Surveillance on November 1, 2011

      One of the factors that tended to show Petitioner possessed the cocaine found at

the 32nd Street house was Officer Geelhood's testimony that he saw Petitioner

engaging in suspected drug transactions at that address on November 1, 2011.

Geelhood was "quite positive" and "absolutely" certain that Petitioner was the person he

observed at 5023 32nd Street on November 1, 2011.  (11/8/12 Trial Tr. at 39-40, 45,

docket no. 8-3, Pg ID 226-27, 232.)  He stated that he used binoculars during his

surveillance and that he had no trouble viewing the suspect.  (*Id.* at 36, 45, Pg ID 223, 232.)

At Petitioner's trial in November of 2012, Petitioner was considerably heavier than the suspect Officer Geelhood described in his warrant application following his surveillance on November 1, 2011.  In addition, Geelhood did not describe the suspect in the warrant application as wearing eyeglasses even though Petitioner claimed at trial that he had worn eyeglasses all his life and probably could not walk out of the courtroom without them.  (*Id.* at 82, Pg ID 269.)  However, the prosecution produced a Secretary of State document dated January 10, 2011, which depicted Petitioner as thinner and without eyeglasses.  (*Id.* at 44-46, 49, Pg ID 231-33, 236.)  The trial court, moreover, intimated that Geelhood's identification of Petitioner was reliable (11/12/12 Trial Tr. at 31-32, docket no. 8-4, Pg ID 312-13), and a reviewing court, such as this Court,

> does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court. *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983).  It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony.  *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992).

*Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003).  Thus, "[a]n assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims."  *Id.* (citing *Gall v. Parker*, 231 F.3d 265, 286 (6th Cir. 2000)).

### b.  Other Evidence

In addition to evidence that Petitioner was engaged in suspected drug

transactions at 5023 32nd Street on November 1, 2011, the next day the

> police found the cocaine in the second-floor living quarters, and sufficient
> evidence suggested defendant occupied or had control over that area.
> The cocaine was in a clothes hamper that held male clothing, and police
> seized the letter addressed to defendant from the table under which the
> cocaine was found.  Additionally, defendant's parole agent, Cyndi Izumi,
> testified that she visited defendant at 5023 32nd Street and that defendant
> told her he lived there.  Indeed, defendant admitted that he told Izumi that
> he lived at the house and that he had, in fact, lived there for a time.  The
> Secretary of State document listed defendant's address as 5023 32nd
> Street, and Officer Geelhood testified that during the search, defendant's
> mother directed him to a second residence where he could find defendant.
> Officer Geelhood went there and observed a vehicle that had been parked
> in front of 5023 32nd Street during the surveillance.

*Chancellor*, 2014 WL 6865488, at *2.

### c.  Conclusion

A rational trier of fact could have concluded from the evidence viewed in the light

most favorable to the prosecution that Petitioner had a sufficient nexus to the cocaine

found at 5032 32nd Street and that he constructively possessed it.  As the Michigan

Court of Appeals pointed out, the evidence at trial linked Petitioner to the house

"through identification of him as the person involved in the front-door transactions and

his admission that he at times lived there."  *Id*.

Petitioner's parole agent, moreover, testified that the only address she had for

Petitioner was the 32nd Street address.  She also testified that either Petitioner or his

mother informed her that Petitioner slept upstairs at that address and that Petitioner had

said only his mother and sister lived there with him.  (11/8/12 Trial Tr. at 65-68,

document no. 8-3, Pg ID 252-55.)  Additionally, the police found a piece of official mail

12

addressed to Petitioner on the table above the hamper containing the cocaine and drugs.

The Court believes there was sufficient evidence to convict Petitioner of possessing cocaine.  And even if the Court concludes otherwise, which it does not, the state appellate court's adjudication of Petitioner's claim was objectively reasonable. Although it was a close issue, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 562 U.S. at 102.  The Court therefore declines to grant relief on Petitioner's sufficiency-of-the-evidence claim.

**B.  Trial Counsel**

In his second and final claim, Petitioner alleges that trial counsel was ineffective for failing to call his wife and mother as defense witnesses to corroborate his testimony that he did not live at 5023 32nd Street.  Petitioner claims that he lived with his wife on Robson Street at the time of the raid at the 32nd Street address and that he merely used the 32nd Street address when he was first released on parole from a prior conviction because there was no electricity at the Robson Street house at the time.  He asserts that, by January 2011, he had returned to his home on Robson.  Petitioner further alleges that trial counsel was ineffective for failing to introduce a quit claim deed showing that the property at 9209 Robson was deeded to him on February 8, 2008, and a utility bill addressed to him at 9209 Robson Street.

Finally, Petitioner claims that counsel was ineffective for failing to object to the fact that the cocaine in evidence was in an altered state (liquid, as opposed to, solid) when it was introduced at his trial.  The Michigan Court of Appeals rejected Petitioner's claim about trial counsel on the basis that, even assuming counsel's acts were

13

ineffective, Petitioner had not established prejudice.  *See Chancellor*, 2014 WL 6865488, at *2 n.2.

### 1.  Clearly Established Federal Law

"[T]he clearly established federal law here is *Strickland v. Washington*," 466 U.S. 668 (1984).  *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011).  Under *Strickland*, a defendant petitioner must show that "counsel's performance was deficient" and "that the deficient performance prejudiced the defense."  *Strickland*, 466 U.S. at 687.  "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable."  *Id.*

The "deficient performance" prong of the *Strickland* test "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.*  "Judicial scrutiny of counsel's performance must be highly deferential."  *Id.* at 689.

To demonstrate that counsel's performance prejudiced the defense, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694.  "This does not require a showing that counsel's actions 'more likely than not altered the outcome,' " but "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 111-12 (quoting *Strickland*, 466 U.S. at 693).

### 2.  Application

Petitioner has not submitted any affidavits from his mother and wife stating that they were willing to testify that Petitioner did not live at 3023 32nd Street.  Even if they

had been willing to testify that Petitioner lived with his wife on Robson Street, the trial court in all likelihood would have found their credibility diminished because they were closely related to Petitioner and, as such, were interested witnesses. *See Ballinger v. Prelesnik*, 709 F.3d 558, 563 (6th Cir. 2013) (stating that it was within reason to assume that an alleged alibi witness's credibility would be diminished as that of an interested witness because she and the petitioner had an intimate relationship).

Furthermore, there was persuasive evidence that Petitioner stayed at the 32nd Street address at least some of the time and that he possessed the cocaine found there. As noted above, Officer Geelhood claimed to see Petitioner distributing drugs at the 32nd Street address, and an opened piece of official mail addressed to Petitioner was found on the second floor of the house, which consisted of furnished living quarters, including at least one bedroom. The mail was lying on a table in the upstairs kitchen. Under the table was a hamper containing men's clothing, two loaded handguns, and the cocaine. There was no evidence corroborating Petitioner's testimony that his brother, his male cousin, and his mother's boyfriend also lived in the house.

In light of the evidence suggesting that Petitioner constructively possessed the cocaine at the 32nd Street address, there is not a substantial probability that Petitioner would have prevailed at trial if his attorney had produced his wife and mother as witnesses or if the attorney had introduced documents showing that Petitioner lived elsewhere. Therefore, even if defense counsel's performance was deficient, Petitioner was not prejudiced by the deficient performance.

15

As for the liquid cocaine in evidence, Officer Geelhood testified that the cocaine consisted of white chunks when it was seized, that it had liquified by the time of trial, and that cocaine can become liquid if it is exposed to heat.  (11/8/12 Trial Tr. at 31-32, docket no. 8-3, Pg ID 218-19.)   A forensic scientist, moreover, explained to the trial court off the record that it was not uncommon for cocaine to change from a solid form to a liquid form.  (12/12/12 Sentencing Tr. at 6-7, 9, docket no. 8-5, Pg ID 323-24, 326).

Furthermore, the parties stipulated that two of the small bags of cocaine seized by the police and later analyzed by the forensic scientist weighed 516.65 grams. (11/8/12 Trial Tr. at 62, docket no. 8-3, Pg ID 249.)  Thus, the weight of the cocaine was clearly established, and defense counsel was not ineffective for objecting to the fact that the cocaine was in liquid form by the time it was introduced at trial.  Even if counsel's performance was deficient, the deficient performance could not have prejudiced the defense, because the trial court stated at sentencing that the altered form of the cocaine was not a basis for granting a new trial.  (12/12/12 Sentencing Tr. at 9, docket no. 8-5, Pg ID 326.)

To conclude, Petitioner has failed to demonstrate that his trial attorney's performance was deficient and that the deficient performance prejudiced the defense. The state appellate court's rejection of Petitioner's claim, moreover, was objectively reasonable and neither contrary to, nor an unreasonable application of, *Strickland*.  The Court therefore declines to grant relief on Petitioner's ineffective-assistance-of-counsel claim.

16

**CONCLUSION & ORDER**

The state appellate court's opinion and order in this case did not result in a decision that was contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts.  It certainly was not "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement."  *Richter*, 562 U.S. at 103.  The Court **THEREFORE ORDERS THAT** Petitioner's petition for writ of habeas corpus is **DENIED**.

Before Petitioner may appeal this Court's decision, a certificate of appealability must issue.  28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward:  The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.*"  Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Reasonable jurists have reached opposing conclusions on Petitioner's first claim regarding the sufficiency of the evidence.  Two state-court judges found the evidence at trial sufficient to sustain Petitioner's conviction, while a third judge voted to reverse Petitioner's conviction and remand his case for a new trial.  Thus, reasonable jurists could debate this Court's assessment of Petitioner's first claim.  The Court therefore grants a certificate of appealability on the first habeas claim.  The Court declines to grant a certificate of appealability on Petitioner's second claim (ineffective assistance of trial counsel) because reasonable jurists would not debate the Court's assessment of

17

that claim.  Finally, Petitioner may proceed *in forma pauperis* on appeal because he

was granted leave to proceed *in forma pauperis* in this Court, and an appeal could be

taken in good faith.  Fed. R. App. P. 24(a)(3)(A).

**IT IS SO ORDERED.**

Dated:  September 12, 2016                          s/ Sean F. Cox_____
                                                                         Sean F. Cox
                                                                         United States District Judge


I hereby certify that on September 12, 2016, the document above was served on
counsel of record via electronic means and upon Darell Deon Chancellor via First Class
Mail at the address below:

DARELL DEON CHANCELLOR 351588
CHIPPEWA CORRECTIONAL FACILITY
4269 W. M-80
KINCHELOE, MI 49784

                                                                         s/ J. McCoy_____
                                                                         Case Manager

18